SUPERDAWG DRIVE-IN, INC., Counterplaintiff-Appellant, *v.* THE CITY OF CHICAGO, Counterdefendant-Appellee.

First District (1st Division)   No. 81—1165

Opinion filed August 23, 1982.—Supplemental opinion filed on denial of rehearing November 1, 1982.

William M. Brandt, John B. Wolff, and Scott Z. Berman, all of Chicago, for appellant.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Maureen J. Kelly, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

An action to abate a nuisance was brought by nearby property owners against Superdawg Drive-In, Inc., and while said action was pending, the City of Chicago (City) erected a barricade which prevented the use of an alley behind the Superdawg property by Superdawg customers. Superdawg filed a third-party action against the City seeking an injunction mandating the removal of the barricade and monetary damages for loss of business. The circuit court found that the City acted lawfully in erecting the barricade, and the court dismissed the third-party action. On appeal, Superdawg raises three issues: (1) whether the action of the City constitutes selective enforcement of a municipal regulation and is violative of the equal protection clause; (2) whether the City ordinance and applicable regulations governing driveways and alley access improperly delegated legislative authority to City employees; and (3) whether the action of the City violated the due process clause.

Superdawg Drive-In, Inc., is a fast-food business which has been in operation at 6363 N. Milwaukee Avenue since 1948. The premises include a parking area which is to the east and south of the building in which the business is located. Two driveways from Milwaukee Avenue provide access to the parking area. In addition, customers could also gain entrance to the parking area from a north-south alley which is adjacent to the Superdawg property on the east. Until 1964 or 1965, the alley was not paved and, from time to time, Superdawg would lay cinders and grade the alley. At some time between 1966 and 1968, the City paved the alley with concrete which replaced the asphalt paving which was laid in 1964 or 1965. At the time Superdawg commenced operations, the area to the east was prairie. Over the years, the neighborhood was developed with apartment buildings.

In 1970, neighbors of Superdawg complained to the City about the use of the alley by Superdawg customers. In May 1970, the Department of Streets and Sanitation wrote a letter to Superdawg which stated unless the business stopped using the alley for ingress and egress, its permit for the two driveways from Milwaukee Avenue would be revoked. Superdawg erected a fence along the alley, although it retained access to the alley at the north and south ends of the fence. In July 1970, Superdawg submitted a proposal to the Department of Streets and Sanitation which provided for no access to the alley. This proposal was never implemented. Between 1970 and 1977, there were no communications between Superdawg and its neighbors or the City. In 1975, Superdawg closed the alley entrance

to its parking lot at the north end of the fence, but its customers continued to use the south alley entrance.

In November 1977, the neighbors who owned the property across the alley from the south alley entrance to the Superdawg property filed this action. The complaint alleged that Superdawg's customers created a nuisance through their use of the south alley entrance. The plaintiffs sought money damages and an injunction requiring Superdawg to erect a fence or barricade at the alley entrance across from their home as a means of abating the nuisance. Subsequently, Superdawg and plaintiffs reached an agreement whereby Superdawg erected a barrier at the south alley entrance. However, Superdawg opened the north alley entrance which it had closed in 1975. George and Gene Tyman who owned the property across from the north alley entrance were granted leave to intervene in this action. The Tymans' complaint alleged that Superdawg had created a nuisance by permitting its customers to enter and exit its premises into the alley across from the Tymans' residence. Following the Tymans' intervention and settlement of the dispute with the original plaintiffs, the action as it pertained to the original plaintiffs was dismissed.

In September 1979, while the Tymans' action was pending, the Tymans complained to the City about the use of the alley by Superdawg's patrons. On September 29, 1979, the Department of Streets and Sanitation sent a letter to Superdawg, which stated in pertinent part:

> "Numerous complaints to this office has [sic] resulted in an investigation which indicates that the public alley at the rear of the [Superdawg] property is also being used for ingress and egress. This alley usage is creating a public nuisance as well as a dangerous traffic hazard.
>
> We are requiring you to close off all vehicular alley access with a permanent fence, guard rail or wheel stops within 20 days from the above date, or it will be necessary to order your driveway permit revoked and the driveways removed. An inspection of the subject premises will be conducted after 20 days."

On October 31, Superdawg's driveway permit for the two Milwaukee Avenue driveways was revoked for "failure to comply with a Department of Streets and Sanitation regulation, which prohibits egress into an alley." The letter stated that the permit would be reinstated "upon proof that you have complied with our regulations." During the time between the September 29 letter and the letter of revocation, the record does not reveal whether an inspection of the Superdawg prem-

ises was conducted. In a letter dated November 9, the Department rescinded its October 31 revocation order and, on the same day, erected a steel and concrete barricade at the north alley entrance to the Superdawg property.

On November 16, 1979, Superdawg brought a third-party action against the City seeking monetary damages for loss of business occasioned by the City's action and for an injunction requiring the removal of the barricade installed by the City. In April 1980, the trial court granted Superdawg's motion for a directed verdict at the close of the Tymans' case for monetary and injunctive relief.

During trial on Superdawg's third-party action against the City, and after Superdawg presented its case, the City presented its three witnesses. Patrick Arnold, a city planner with the City's Department of Planning, testified that he had never visited the Superdawg premises. He stated that he was not aware of any studies which were done pertaining to a situation similar to that involving Superdawg. Arnold did not know whether any barricades had been erected at any other commercial establishments as a means of preventing alley ingress and egress. According to Arnold, the City has a policy of prohibiting a commercial establishment from using an adjacent alley for ingress and egress where the establishment has at least one driveway for ingress to and egress from a street. In Arnold's opinion, a commercial establishment should not have the use of an adjoining alley where the establishment has at least one driveway providing access to a street. John McNamara, who was an independent real estate expert under contract with the City and who was qualified as a real estate expert, stated that he had visited the Superdawg property on a Saturday morning at 9 a.m. He stated that he did not observe any moving vehicles in the alley adjacent to the Superdawg property on the morning of his visit. During the course of his testimony, the parties stipulated that the use of an alley for ingress and egress has a deleterious effect on adjacent property and interferes to some extent with the peaceful use and enjoyment of adjacent property. George Kloak, the deputy commissioner of the Department of Streets and Sanitation, testified that he had visited the Superdawg property before and after the erection of the barricade in the alley. He stated that no study of the situation involving the alley use was ever made and that, in his judgment, a hazardous condition existed in the alley because vehicles had to cross a sidewalk to enter and exit the Superdawg property from the alley and because pedestrians were unaware that the alley adjacent to Superdawg was a heavy traffic generator. Kloak stated that he was "obligated to take action immediately and [did not] worry about a

counsel [*sic*] order or an illegal thing. [He] first put the traffic regulations in or the traffic control device in under a Commissioner's authority before any other situation comes up."

On August 25, 1980, the circuit court entered its final order and opinion concerning Superdawg's third-party action. The sole issue decided by the trial court was whether the City selectively enforced its ordinance and applicable regulations against other establishments. The court found that there was a rational basis for the City's erection of a barricade and that the City had acted lawfully. The court did not make any finding as to whether the public safety was jeopardized by the use of the alley, nor did the City present any evidence on this issue. Accordingly, the court dismissed Superdawg's third-party action.

At the outset, it is appropriate to set forth the pertinent City ordinance and regulations thereto. Sections 33—15 of the Municipal Code of Chicago (hereinafter "Driveway Permit Ordinance") provides for the use and maintenance of driveways across City property and for the application and issuance of driveway permits. Pursuant to the Driveway Permit Ordinance, the Department of Streets and Sanitation has promulgated regulations and has published a booklet entitled, "How To Secure a Driveway Permit," which states, *inter alia*: "Physical barriers preventing alley access are required when there is sufficient vehicular movement on private property for ingress and egress from the driveway only." Also at issue is Regulation K of "Traffic Regulations of Driveways Addenda; Traffic Restrictions and Methods of Operations," which states: "Driveway Permit for subject locations has been approved in accordance with the following requirements and methods of operation. Any deviation will subject the permit to revocation by the Commissioner of Streets and Sanitation *** K. Provide physical barrier at all open areas (including alleys) to prevent encroachment on public property." Neither the ordinance nor regulations set forth any procedures for notice and opportunity to be heard on any alleged violations.

Superdawg maintains that it was entitled to notice and a hearing prior to any action by the City and since the City failed to provide notice and a hearing to Superdawg, its rights under the due process clauses of the Federal and State constitutions were violated (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2).

■ Due process is a flexible concept which requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 313, 94 L. Ed. 865, 873, 70 S. Ct. 652, 656-57.) Interested

parties must be given notice and an opportunity to be heard unless there are extraordinary circumstances which necessitate a governmental body taking immediate action to protect a valid governmental interest. See *Boddie v. Connecticut* (1971), 401 U.S. 371, 28 L. Ed. 2d 113, 91 S. Ct. 780; *Valdez v. City of Ottawa* (1982), 105 Ill. App. 3d 972, 434 N.E.2d 1192.

■ In the instant action, it is necessary to inquire as to whether the City provided Superdawg with adequate notice of an alleged violation of an ordinance or regulation or, if not, whether extraordinary circumstances existed, which in some manner necessitated the immediate action taken by the City in the erection of the barricade. A review of the record fails to support the action of the City as to giving adequate notice of an alleged violation of either a City ordinance or a Department of Streets and Sanitation regulation. The September 1979 letter to Superdawg from the Department stated: "The alley usage is creating a public nuisance as well as a dangerous traffic hazard." This letter fails to set forth any facts and is clearly inadequate as a means of apprising Superdawg that it was in violation of an ordinance or regulation. The letter also was deficient in that it did not specifically set forth the ordinance or regulation which was allegedly violated. Thus, the purported notice was deficient under the due process clause and did not adequately apprise Superdawg of an alleged violation.

The record is silent on the question of whether extraordinary circumstances existed to support the City's action or whether the public safety was in any manner jeopardized by the traffic in the alley. The testimony of the three witnesses presented by the City did not disclose that an actual and immediate safety hazard of a substantial nature existed. There was no evidence except for the opinion of one witness, unsupported by any facts, that the use of the alley posed a substantial and immediate hazard.

It follows from the record in this case that the action of the City in erecting a barricade in the alley adjacent to Superdawg's property was improper because the City failed to establish that extraordinary circumstances existed which would justify emergency action without first providing Superdawg with adequate notice and an opportunity to be heard on the charges. (See *Valdez v. City of Ottawa*.) Therefore, it is necessary to remand this cause to the circuit court for a new trial.

Accordingly, this matter is reversed and remanded to the circuit court of Cook County for further proceedings consistent with the views expressed herein.

Judgment reversed and remanded.

GOLDBERG and McGLOON, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

In its petition for rehearing, cross-defendant-appellee, City of Chicago contends that Superdawg has no protectible property interest in its access to an adjacent alley to which due process rights of notice and hearing attach.

The City is misguided in its argument that this court granted or recognized a property interest in Superdawg's alley access. At no point did the trial court or this court conclude or recognize any such property interest. The City predicated its action of barricading the alley upon a purported violation of a City ordinance or regulation which created a safety hazard, yet the record is devoid of any evidence or facts to support this charge. George Kloak, a witness for the City and the individual who ordered the erection of the alley barricade, testified that no studies were made to establish that any safety hazard existed prior to the construction of the barricade. The only matter which was decided by the trial court pertained to Superdawg's claim that the City had selectively enforced its ordinance or regulation against Superdawg. No other findings were made by the trial court.

Our decision recognizes that, under the facts and circumstances of this case, Superdawg was entitled to notice and a hearing of any purported violation of an ordinance or regulation, as claimed by the City, and the failure by the City to point to anything in the record which would excuse or dispense with its failure to provide Superdawg with notice and a hearing. It was improper for the City to conclude, without sufficient evidence, that a violation of an ordinance or regulation had occurred which resulted in a safety hazard and that an alley barricade was necessary to correct the situation.

Similarly, there was no decision by the trial court regarding the existence of a safety or other hazard which required the alley to be barricaded. In the absence of any findings by the trial court to support the City's actions, we adhere to our decision.

GOLDBERG and McGLOON, JJ., concur.